## Mount Vernon Bank v. Holden.

Where a letter to an endorser of a promissory note, containing notice of its non-payment, is delivered to the post-master, or in his absence, to some person acting as his clerk, and in a room not appropriated as a post office, in season for the mail of the next day, such delivery, if it be in conformity with a general and known usage of the office, is a depositing of the letter in the post office in the sense of the law, and will charge the endorsers with notice, though it be not sent by the mail of the day next after the note fell due.

Where a person assumes to act as an officer in a post office, the rights and liabilities of third persons will not be impaired by his defaults, though he may have neglected to take the required oath or affirmation and may be subject to the penal consequences of such neglect.

THIS was an action of assumpsit against the defendant as an endorser on a promissory note. It appeared on the trial, before Greene C. J., that the note fell due on Friday, and was noted for non-payment, and a notice thereof was, on the same day, enclosed in an envelope addressed to the defendant, and delivered to one Richard Howard, who voluntarily undertook to deposit it in the post office. The postmaster was absent from his office on Friday, and Howard, who was the father of the postmaster, and familiar with the usages of the office, delivered the notice to one Carpenter, in the store of the postmaster, the said Carpenter being a clerk of the postmaster in the business of his store, and who, although it did not appear that he

62

was a sworn clerk in the post office, was yet in the custom of receiving letters in the absence of the postmaster. The postmaster kept a tavern, and a store in a room built out from his tavern house, and also occupied and managed a farm in connection with his other business ; and he kept a room in his tavern house appropriated to the post office, and which was called the post office, where the mail bags were. always opened, and where the letters received by the mail for that office were always kept, and where the letters sent from that office were always put into the mail, and in that room there was a box marked " letter box," in which letters were sometimes put by persons who mailed letters at that office, and where the keys of the mail bag were kept, and where, if letters were deposited, they would be sent by the next mail. It was also proved to be the usage at this office, for persons having letters to deliver at the office to be sent by mail, to deliver the same to the postmaster in the store, or in his absence, to the said Carpenter, where the letters, thus received, were put by the postmaster or his clerk in a desk in the store, and thence taken to the back room and mailed in season to go by the next mail. That this usage was generally known and followed by persons having letters to deliver at the post office to be sent by mail, and that the principal part of the letters intended to be mailed at this office were delivered in conformity to this usage. Testimony was also put in tending to show that this letter was not deposited in the room occupied for a post office, which did not adjoin the store, but was a room back of the bar-room, the bar-room intervening between the two, on the day the note fell due, or on the day succeeding, until after the departure of the mail, when it was found by the postmaster on the lid of the letter box, and

was not sent until the Monday following, the usual time
for the departure of the mail being ten o'clock in the
morning.

It was contended for the defendant that to charge him
as endorser, the notice should have been deposited in the
post office in season for the mail of the next day after the
maturity of the note, and that it was not so deposited in
the sense of the law unless it was deposited in the letter
box, or delivered to the postmaster or his authorized clerk
or agent, in the room appropriated for the post office, in
season for the letter to be sent by said next mail, and
that the delivery of the letter to any person in the store,
or in any other part of the tavern building, was not de-
positing the letter in the post office in the sense of the
law, but that the person so entrusted with the letter be-
came the agent of the plaintiffs for the purpose of deposit-
ing the same in the post office in due season, and that
the plaintiffs were liable for the miscarriage or default of
such person, and if the letter was not deposited by him
in the post office in season for the next mail, the defen-
dant was not liable. And the counsel for the defendant
requested the Court so to instruct the jury, which request
the Court declined to comply with, and did instruct the
jury,—that if they found that at this particular post of-
fice there was a custom of receiving letters for the mail at
the store, sanctioned by the postmaster and known to the
neighborhood and to the person who took the letter on
behalf of the plaintiffs, although such person knew where
the letter box was, and had free access to it, that the de-
livery of such letter to the person so employed by the
postmaster as aforesaid, in the store, in the absence of the
postmaster, was a depositing of such letter in the post of-
fice in the sense of the law, and that, if so delivered in

season for the first mail of the next day, it was sufficient to charge the defendant, although it was not sent by that mail. The jury found a verdict for the plaintiff, and the defendant thereupon moved to set aside said verdict, and for a new trial upon exceptions to the charge of the Court.

*Titus* for the plaintiff.

*Jenckes* for the defendant.

HAILE J. delivered the opinion of the Court.

It is contended by the counsel for the defendant that under the Act of Congress establishing and regulating the Post Office Department and the regulations for its government, the delivery of the letter containing this notice, at the store of the postmaster, was not a delivery in the post office, and that the delivery to Carpenter, the assistant of the postmaster, in the absence of the postmaster, was not a delivery to the postmaster in the sense of the law, because Carpenter had not been sworn.

By the 11th section of the Act of Congress, 4 U. S. Statutes at Large, p. 105, it is provided, " that every postmaster shall keep an office, in which one or more persons shall attend on every day in which a mail shall arrive, by land or water, as well as on other days, at such hours as the Postmaster General shall direct, for the purpose of performing the duties thereof."

A reasonable and practical construction of this section, in reference to the convenience of the postmaster and the accommodation of the public, would not require him to keep his office in a single room, nor to confine the receipt

and delivery of letters to a single place in his office. And, indeed, this, in the city of Providence and other large cities, is not done and is wholly impracticable, with a regard to the convenient performance of the duties of the office, and the prompt accommodation of the public. Hence, several places in the post office are used or designated for the receipt and delivery of letters, while other rooms in the same building are used for assorting letters and making up the mails.

And, in a small country post office, like the one where this letter was left, the postmaster must necessarily devote a large portion of his time to other occupations than the duties of his office, and may with propriety, we think, appropriate his store or place of business, in the same building, as a part of his office for the receipt and delivery of letters, provided this be made known to the public ; while his letters should be assorted and his mails made up in a room exclusively devoted to that purpose, in conformity with the spirit of the regulations of the Post Office department.

If, therefore, " at this particular office, there was a custom of receiving letters for the mail at the store, sanctioned by the postmaster and known to the neighborhood, and to the person who took the letter on behalf of the plaintiffs from the Bank to the store," that store was, in our opinion, the post office for the delivery of letters in the sense of the law. In regard to the ground that Carpenter, the assistant, was not sworn, there is no evidence how that fact was, and no inference can be drawn from his employment by the postmaster on his farm and his store, that he was not a legally qualified assistant.

The regulations for the government of the Post Office department, chap. 7, sec. 39, which provide that the post-

master cannot be permitted to transfer the charge of his office and the performance of its duties to another, cannot be intended to prohibit the appointment of an assistant to perform the duties of postmaster in his absence, especially as the 11th section of the Act of Congress, above referred to, provides that one or more persons shall attend for the purpose of performing the duties of the office.

But this section of the Regulations was intended to prevent the postmaster from transferring the charge of his office and the performance of its duties to another, and thereby creating a sinecure and virtually substituting in his stead, as postmaster, a person unknown to the department ; for the 40th section of the Regulations expressly provides, that the duties of his office may be performed by " a sworn assistant or assistants, whom he may employ to aid him when necessary."

The principal objection to Carpenter, as an assistant, however, is, that there was no evidence that he had been sworn.

By the 2d section of the Act of Congress, 4 U. S. Statutes at Large, p. 103, it is provided, that the Post-master General, and all other persons employed in the general post-office, or in the care, custody, or conveyance of the mail, shall, previous to entering upon the duties assigned to them, or in the execution of their trusts, and before they shall be entitled to receive any emolument therefor, respectively take and subscribe the oath or affirmation, the form of which is therein prescribed. And it is further prescribed, in the same section, that every person, who shall be in any manner employed in the care, custody, conveyance, or management of the mail, shall be subject to all the pains, penalties, and forfeitures, for violating the injunctions or neglecting the duties required of

him by the laws relating to the establishment of post-
offices and post roads, whether such person shall have
taken the oath or affirmation, above prescribed, or not.

From the latter clause in this section, it was evidently
the intention of Congress, that the acts of all persons as-
suming to officiate under the post-office department, so
far as the public or third persons are concerned, should be
deemed valid, although they may have neglected to take
the required oath or affirmation, and may be subject to
the penal consequences of such neglect. In this respect
such officers, as to the public or third persons, must be
considered and treated as other executive officers acting
under color of authority of law; their acts must be held
valid, and they deemed to be officers *de facto*, though
they may not be, at the time, officers *de jure*.

In this view of the law, Carpenter must be considered
to have been the assistant of the post-master, and a deliv-
ery of the letter to him, at the store, a delivery to the
post.master. Public policy requires that such should be
the law, for the public have no means of ascertaining
whether such officers have taken and subscribed the re-
quisite oath or affirmation, except by application to the
general post-office, where a certificate thereof is required
by law to be filed. And such an application could not
ordinarily be made in season to avail a person engaged in
a business transaction like this.

We find, therefore, no error of law in the charge of the
Court, and, as the verdict is sustained by the evidence,
this motion must be overruled, and judgment rendered
for the plaintiff on the verdict.